IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| J.T., by and through his parents Renee and Floyd T., | ) ) ) | CIVIL NO. 11-00612 LEK-BMK |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**ORDER AFFIRMING IN PART AND REVERSING AND REMANDING IN PART THE HEARINGS OFFICER'S JUNE 7, 2013 DECISION AFTER REMAND AND SEPTEMBER 26, 2013 SUPPLEMENTAL DECISION AFTER REMAND**

Before the Court is an appeal by Plaintiffs J.T. ("Student"), by and through his parents Renee and Floyd T.[1] ("Plaintiffs"), of the Administrative Hearings Officer's ("Hearings Officer") June 7, 2013 Findings of Fact, Conclusions of Law and Decision After Remand ("Decision on Remand") and the Hearings Officer's September 26, 2013 Supplemental Findings of Fact, Conclusions of Law, and Supplemental Decision After Remand ("Supplemental Decision on Remand").  On September 30, 2013, Plaintiffs filed their Opening Brief re Decision on Remand ("Opening Brief").[2]  [Dkt. no. 60.]  Defendant Department of Education, State of Hawai`i ("the DOE") filed its Answering Brief

---

[1] The Court will refer to Renee T. as "Mother" and to Renee T. and Floyd T. collectively as "Parents".

[2] Plaintiffs filed an Erratum to the Opening Brief on September 30, 2013 to replace an exhibit to the Opening Brief that disclosed Student's full name.  [Dkt. no. 61.]

on October 30, 2013, and Plaintiffs filed their Reply Brief re Decision on Remand ("Reply Brief") on November 12, 2013.[3]  [Dkt. nos. 69, 77.]  On December 2, 2013, Plaintiffs filed their Supplemental Brief regarding the Supplemental Decision on Remand. [Dkt. no. 81.]  The DOE filed its Supplemental Brief on December 16, 2013, and Plaintiffs filed their Supplemental Reply Brief on December 30, 2013.  [Dkt. nos. 82, 83.]

The Court heard oral argument in this matter on February 10, 2014.  Appearing on behalf of Plaintiffs was John Dellera, Esq., and appearing on behalf of the DOE was James Raymond, Esq.  After careful consideration of the briefs, the arguments of counsel, and the relevant legal authority, the Decision on Remand and the Supplemental Decision on Remand are HEREBY AFFIRMED IN PART and REVERSED AND REMANDED IN PART for the reasons set forth below.  In particular, this Court REMANDS this case to the Hearings Officer for further consideration of the issue regarding the rule-out of a central auditory processing disorder ("CAPD").

**BACKGROUND**

I.   **Procedural History in the United States District Court**

Plaintiffs filed their Complaint on October 12, 2011 pursuant to the Individuals with Disabilities Education Act of

---

[3] Plaintiffs filed an Erratum to the Reply Brief on November 12, 2013 to correct the hearing date on the cover sheet.  [Dkt. no. 78.]

2004 ("IDEA"), 20 U.S.C. § 1400, *et seq*.  Plaintiffs appealed the Hearings Officer's September 12, 2011 Findings of Fact, Conclusions of Law and Decision.  On May 31, 2012, this Court issued its Order Reversing in Part and Remanding Hearings Officer's Order Dated September 12, 2011 ("5/31/12 Order"). [Dkt. no. 27.[4]]  In light of the remand, the case was administratively closed.

 After the Hearings Officer issued his Decision on Remand, this Court granted Plaintiffs' motion to reopen the case and for leave to file an amended complaint.  On July 24, 2013, Plaintiffs filed their First Amended Complaint for Declaratory and Injunctive Relief ("First Amended Complaint").  [Dkt. no. 53.]

 After the filing of Plaintiffs' First Amended Complaint and the remand record on appeal ("Remand ROA"), [filed 8/14/13 (dkt. no. 59),] additional documents were filed with the Department of Commerce and Consumer Affairs ("DCCA"), including the Hearings Officer's Supplemental Decision on Remand.  The parties disagreed as to whether this Court should consider those documents and, on October 15, 2013, the DOE filed a Request to Set a Status Conference.  [Dkt. no. 62.]  At the status conference, this Court ruled that it would consider the additional documents with the Remand ROA.  [Minutes, filed

---

 [4] The 5/31/12 Order is also available at 2012 WL 1995274.

10/23/2013 (dkt. no. 66).]  The Supplemental Administrative Record on Appeal ("Supplemental Remand ROA") was filed on October 29, 2013.  [Dkt. no. 68.]

The magistrate judge granted Plaintiffs' motion for leave to amend their complaint to include an appeal from the Supplemental Decision on Remand.  Plaintiffs filed the Second Amended Complaint on November 12, 2013.  [Dkt. no. 76.]

## II.  <u>Factual and Administrative Background</u>

The factual and procedural background relevant to the original administrative proceedings is set forth in the 5/31/12 Order, in which this Court ruled as follows:

• The Hearings Officer correctly found that the DOE denied Student a Free Appropriate Public Education ("FAPE") by excluding Mother from the May 29, 2009 Individualized Education Program ("IEP") Meeting.  5/31/12 Order, 2012 WL 1995274, at *22.

• The DOE denied Student a FAPE by failing to allow Mother a reasonable opportunity to attend the March 3, 2010 IEP Meeting.  <u>Id.</u> at *23-24.

• The DOE denied Student a FAPE by disregarding Mother's concerns based on observations of Student outside of school and by disregarding a neuropsychological evaluation by Peggy Murphy-Hazzard, Psy.D., dated February 25, 2009 (the "Murphy-Hazzard Report").[5]  <u>Id.</u> at *24-26.

• Plaintiffs were not entitled to reimbursement for Student's tuition and expenses at Loveland Academy ("Loveland")

---

[5] The Murphy-Hazzard Report concluded that Student "had below-average to borderline verbal cognitive abilities, the possibility of an auditory processing disturbance, a basis for diagnosing attention deficit hyperactivity disorder (ADHD), and a basis for diagnosing a mixed, receptive-expressive language disorder."  5/31/12 Order, 2012 WL 1995274, at *1.

because Plaintiffs failed to establish that Loveland was an appropriate placement, as required by 34 C.F.R. § 300.148(c) and the relevant case law.  Further, even if it was an appropriate placement, Plaintiffs' claim for reimbursement was barred by the 180-day statute of limitations in Haw. Rev. Stat. § 302A-443(a)(2).  Id. at *26-28.

- Plaintiffs were not entitled to a compensatory education award of reimbursement of Student's two years of tuition at Loveland, but Plaintiff was entitled to compensatory education for the possible loss of educational opportunity. Id. at *29-30.

This Court therefore ordered the parties to meet and confer regarding neutral, appropriate evaluations of Student's mental health and communication needs.  The parties were to submit the results of the evaluations to the Hearings Officer, along with any briefing that the Hearings Officer allowed.  This Court tasked the Hearings Officer with the determination of "an award of compensatory education tailored to remedy any injury that [Student] may have suffered as a result of the denial of a FAPE [that] will appropriately restore [Student] to the position he would have been in had there not been a procedural violation of the IDEA."  Id. at *30.  This Court directed the parties to equally split the cost of the evaluations and to bear their own attorneys' fees and costs in the remand.  Id.

The parties had difficulty agreeing on neutral evaluators, and it was not until January 29, 2013 that the parties submitted a January 14, 2013 evaluation by psychiatrist William M. Bolman, M.D., F.A.A.C.A.P. ("Bolman Report"), and a January 18, 2013 initial assessment report by speech-language

pathologist Jamie Uesato ("Uesato Report").[6]  The parties

submitted simultaneous briefs on the compensatory education issue

on March 13, 2013, and simultaneous reply briefs on

April 8, 2013.  [Decision on Remand at 2-3.[7]]

**A.   <u>Decision on Remand</u>**

The Hearings Officer made the following findings

regarding Dr. Bolman's evaluation of Student:

> 7.    In his interview, Student initially said
> he likes Public School,[8] has friends there,
> thought the work there wasn't so hard, said he
> doesn't get picked on there, and that he
> appreciates the help he receives there.  Later,
> Student said he did have problems at school,
> seeing those problems as a matter of pleasing
> teachers and not as a matter of learning.
>
> .  .  .  .
>
> 9.    Mother confirmed that Student was "OK"
> with Public School but told [Dr. Bolman] that it
> was her "impression" that the teachers at Public
> School did not appreciate the degree of Student's
> covering up his cognitive problems and did not
> understand that he was not learning.  She felt
> those teachers tended to treat Student's "normal"
> social presentation and treated his failure as
> mistakes that needed to be corrected.  This
> resulted in Student seeing those teacher
> corrections as criticisms.

------

[6]  The Bolman Report is Remand ROA pages 5-9, [dkt. no. 59-2 at 2-6,] and the Uesato Report is Remand ROA pages 10-13 [dkt. no. 59-2 at 7-10].

[7]  The Decision on Remand is available in the Remand ROA at 238-55.  [Dkt. no. 59-11.]

[8]  Student's home school is Waipahu Intermediate School ("Public School").  [Remand ROA at 237.]  When Dr. Bolman evaluated Student, Student was twelve years old.

10.  No details are provided in [Dr. Bolman]'s Report to support the basis for Mother's "impression" about the teachers at Public School, and none of the "many examples" of Student's alleged "lack of judgment and poor sense of planning and organizing" that Mother related to [Dr. Bolman] are specifically provided in that Report.

11.  Mother reported to [Dr. Bolman] that when Student is in school he is "'shut down', quiet and doesn't make waves."  Mother attributed at least some of this behavior to the medication Student receives in the morning.

12.  Student is receiving an "average to high level" of this medication.  The medication provides good behavioral control but can have "stimulant side effects in social awareness and mood."

13.  Mother was particularly troubled by "dramatic changes" in Student's behavior about 4:30 or 5:00 p.m. when the effects of his medication are wearing off.  He becomes very irritable, messes up his room, breaks things, becomes defiant, and acts quite unlike his usual social self.  [Dr. Bolman] found that this was "almost certainly" one of the withdrawal symptoms of the "higher dosages of stimulants" Student is receiving.

[Id. at 4-5.]

Dr. Bolman noted that Student had a wide variety of previous diagnoses, including ADHD.  The diagnoses raised the question of whether Student had an autism spectrum disorder. Dr. Bolman, however, concluded that autism was not an appropriate diagnosis and ultimately concluded that the diagnosis which best described Student's condition was "Dementia," although that is a disorder which is generally not seen in young children.  [Id. at

7

5.]  The Hearings Officer, however, concluded that Dr. Bolman

ultimately concentrated his report on the complexity of Student's

diagnosis rather than on the dementia diagnosis.  [Id. at 6

(citing Bolman Report at 4).]  Dr. Bolman noted that "Student's

school behavior is seen as impulsiveness and attention problems

which resemble ADHD," but the medication to control those

behaviors, while "narrow[ing] Student's attention so he is less

distractible and more focused on details, . . . decreases

Student's executive functions that have to do with long-term

learning and thus works against his learning."  [Id.]

The Hearings Officer also found:

> 20.  Previous differences of opinion
> regarding Student's educational needs stemmed more
> from previous unawareness of the diagnostic
> complexity of Student's developmental challenges
> rather than whether Student needs private school
> or public school.

> 21.  To [Dr. Bolman], [Loveland] "seemed to
> be more successful" than Public School because
> [Loveland] focused more on general adjustment
> rather than academics.  This, however, was not due
> to Public School's lack of educational or
> technical ability but Public School's
> "understandable" lack of emphasis on Student's
> impaired judgment and the need for supports more
> appropriate for a younger child.  In
> [Dr. Bolman]'s opinion, this should not be hard
> for Public School to correct assuming it accepts
> this change in focus.

[Id.]  Mother told Dr. Bolman that she did not think that the

Public School was open to giving Student more individualized

attention, but the Hearings Officer noted that there was no

8

evidence in the Bolman Report substantiating this fear. [Id. at 7.]

The Hearings Officer noted that Plaintiffs submitted a declaration by Loveland's clinical director with their March 13, 2013 brief which stated that the purpose of Loveland's Day Treatment Program was either to prevent psychological decline and avoid inpatient psychiatric hospitalization or to support clients coming out of such hospitalization.  The Hearings Officer found that there was insufficient evidence that such a level of mental health treatment was necessary.  [Id.]  Dr. Bolman recommended that Student: be placed in the "Other Health Impairment" category; have a Functional Behavior Analysis; and have "a positive behavior intervention based on recognizing and encouraging [S]tudent to ask for help when he does not understand his teachers."  [Id. at 6-7.]

The Hearings Officer noted that the parties did not provide any evidence of Student's academic achievements at Loveland during the period after the original administrative proceedings.  [Id. at 7.]

The Hearings Officer noted that the Uesato Report stated that Student's scores on the following portions of the Comprehensive Assessment of Spoken Language ("CASL") were within age expectations: antonyms, idiomatic language, syntax construction, sentence comprehension, nonliteral language, and

meaning from context.  Student's scores on the following portions

of the CASL were below age expectations: paragraph comprehension,

inference, ambiguous sentences, and pragmatic judgment.  [Id. at

7-8.]  Further,

> 34.  Student's speech rate and fluency were within normal limits for Student's age, gender, and setting.
>
> 35.  Student's language in the areas of semantics (word knowledge), syntax (grammar), and morphology (word endings) were generally developing with [sic] age expectations.
>
> 36.  However, Student's supralinguistics (understanding of complex language) and pragmatic (social use of language) skills were below age expectations. . . .

[Id. at 8.]  The Hearings Officer noted that Uesato apparently

did not have access to Student's prior "speech-language tests,

evaluations, and/or records[,]" and Uesato therefore made no

attempt to compare the results of the tests she administered to

the results of any earlier tests or evaluations.  [Id. at 9.]

Uesato recommended, *inter alia*, that Student continue to receive

speech-language therapy, focusing on pragmatic skills and

supralinguistics.  She also noted "Student 'may benefit' from an

evaluation to rule out auditory processing disorder."  [Id.]

The Hearings Officer rejected the DOE's argument that

the 5/31/12 Order precluded the Hearings Officer from awarding

Plaintiffs Loveland's tuition as compensatory education.  The

Hearings Officer concluded that the 5/31/12 Order denied the

request for reimbursement as compensatory education at the time

of the original administrative appeal because Plaintiffs failed

to prove that such an award was justified.  [Id. at 10-11.]  The

Hearings Officer stated that, even if an award of tuition

reimbursement as compensatory education was possible, the other

grounds in the Decision on Remand supported the denial of

Plaintiffs' request.  [Id. at 14-15.]

> The Hearings Officer stated:
>
> Since the statute of limitations issue was decided
> on factors extraneous to the compensatory
> education issue, it would be potentially ironic,
> but nevertheless theoretically possible, that
> reimbursement of tuition charged by [Loveland]
> (but apparently not paid by Parents) would be an
> appropriate compensatory education remedy despite
> the failure to file a timely request for due
> process hearing.

[Id. at 11.]  The Hearings Officer emphasized that the 5/31/12

Order found that Plaintiffs failed to establish that Loveland was

an appropriate placement.  [Id.]  Further, the Hearings Officer

concluded:

> Where the Court has previously found that
> Student had not shown significant growth at
> [Loveland], that Student had regressed in some
> areas while at [Loveland], that [Loveland]
> underestimated Student's academic capabilities,
> and that [Plaintiffs] had failed to show that the
> program at [Loveland] was designed to meet
> Student's needs, the Hearings Officer cannot agree
> that Student's time at [Loveland] qualifies as
> compensatory education.

[Id. at 12.]  The Hearings Officer rejected Plaintiffs' argument

that the evidence at the original administrative hearing was

"'inaccurate or at least misleading'" as to the source of Student's difficulties at Loveland. [Id. at 13.] The Hearings Officer concluded that the 5/31/12 Order did not direct the Hearings Officer to reopen the record and allow Plaintiffs to re-litigate the issue of whether Loveland was an appropriate placement. [Id.]

The Hearings Officer emphasized that, in spite of a protracted diagnostic period, Loveland initially placed Student in the wrong grade level, and Loveland also failed to diagnose his executive function deficit and focused on ADHD instead. [Id. (citing Bolman Report at 4 cmt. 5).] The Hearings Officer concluded that Loveland did not tailor its program to Student's real needs and, although Dr. Bolman may have found some undefined, unquantifiable benefits from Student's attendance there, these "would have been the product of a fortuitous coincidence and not the product of compensatory education designed to fit the needs of this particular Student." [Id.] In addition, the Hearings Officer found that Plaintiffs

> have not provided any specific evidence that [Student's] two years at Private School remedied any educational deficit of Student, i.e., that any compensatory education actually took place and succeeded. Indeed, Mother's report to [Dr. Bolman] that Student, at school, is "'shut down', quiet and doesn't make waives" is essentially the same as her description of Student at the due process hearing. Any brief, unexplained anecdotal type of references to the effect that things seemed better two years later

are not sufficient to justify the relief sought by [Plaintiffs] . . . .

[Id. at 14.]

As to the speech-language services issue, the Hearings Officer noted that the Uesato Report did not discuss the speech-language problems noted in the Murphy-Hazzard Report, nor did the Uesato Report address how Student benefitted from two years of Loveland's speech-language services. The Hearings Officer concluded that Plaintiffs failed to present evidence that Loveland addressed Student's speech-language needs, and therefore, Student's attendance at Loveland could not be compensatory education as to speech-language services. [Id.]

As to the DOE's proposed compensatory education plan, the Hearings Officer stated that it was insufficient because the DOE staff that proposed the plan did not utilize information about Student's current situation and because the plan could not serve as an interim measure until the formulation of Student's annual IEP. The DOE proposed continuing the 270 minutes per quarter of speech-language services that Student was receiving, with an expanded focus on supralinguistics. [Id. at 15-16.] The Hearings Officer, however, found that it was "impossible to tell from the record presented after remand if these services are sufficient to afford Student compensatory education for the year of speech-language services he should have received in the 2009-2010 school year." [Id. at 16.]

13

As to the recommendation that CAPD needed to be ruled out, the Hearings Officer noted that the DOE claimed it had already conducted the evaluation necessary to rule it out. Although the DOE quoted that report in its brief, it did not provide the report to the Hearings Officer.  Plaintiffs responded that it was improper for the Hearings Officer to consider the report, and that a CAPD evaluation could not be conducted on Oahu.  The Hearings Officer concluded that "the need to rule out central auditory processing disorder remains an open issue." [Id.]  The Hearings Officer ordered the DOE to produce the report the DOE cited in its brief, and stated that: "If this report does in fact 'rule out' auditory processing disorder, then that issue will be closed.  If, however, there is no such 'rule out,' the Hearings Officer reserves jurisdiction to fully implement the [5/31/12 Order] with an appropriate supplemental order regarding an evaluation for auditory processing disorder."  [Id. at 18.]

In his ultimate decision, the Hearings Officer stated that Plaintiffs "failed to propose any adequate program of compensatory education [with respect to mental health] 'going forward[.]'"  [Id. at 17.]  Further, the Bolman Report "does not provide sufficient information for a compensatory program, especially where the problems caused by Student's medication situation are involved."  [Id. (emphasis in original).]  The Hearings Officer noted that the DOE's current services to Student

appeared to comply with Dr. Bolman's recommendations.  [Id.]  The

Decision on Remand therefore states:

> as an award that best approaches compensatory
> education in the area of mental health services,
> the Hearings Officer orders one year of
> compensatory education as follows:
>
> a.   The DOE shall prepare a program of
>      mental health services that incorporates
>      all of the recommendations contained in
>      [the Bolman] Report.
>
> b.   This award may include the services
>      already provided by the DOE during the
>      last school year, but it must also
>      include all appropriate services to make
>      the services provided to Student fully
>      compatible with the recommendations in
>      [the Bolman] Report.
>
> c.   To insure [sic] that Student's program
>      in the mental health services area is
>      appropriate and in compliance with this
>      Decision, the program shall be prepared
>      by a professional, or professionals, in
>      the mental health services area who are
>      knowledgeable about Student's current
>      performance in the classroom and
>      knowledgeable about what educational
>      program and mental health services are
>      currently being provided to him.
>
> d.   The above program shall be formulated in
>      a timely manner so that it can be
>      instituted at the beginning of the 2013-
>      2014 school year.  Implementation shall
>      not be delayed until after the
>      formulation of, or agreement upon, an
>      IEP for that school year.

[Id. at 17-18.]  Further, based on the Uesato Report, the

Hearings Officer ordered:

> the DOE shall formulate a program of speech
> language services that (a) provides no lesser

15

amount of services than Student is already
receiving, and (b) provides all educational
services necessary for Student to achieve in the
areas where Student was found by [Uesato] to be
below age expectations such that during the 2013-
2014 school year Student has an opportunity to
close the gap between accomplishments in those
areas and Student's age expectations by at least
one year.

[Id. at 18.]  The DOE also ordered the implementation of the

speech-language program at the beginning of the 2013-2014,

without regard to the annual IEP.  [Id.]

**B.   Supplemental Decision on Remand**

On June 24, 2013, in response to the Decision on

Remand, the DOE filed the auditory processing disorder evaluation

it cited in its reply brief.  On August 23, 2013, the Hearings

Officer issued an order giving Plaintiffs the opportunity to

respond.  Plaintiffs filed their response on August 27, 2013.

[Suppl. Decision on Remand at 3.[9]]

In the Supplemental Decision on Remand, the Hearings

Officer noted that, on July 8, 2013, Plaintiffs filed a motion in

the instant case seeking leave to amend their complaint to seek

review of the Decision on Remand.  The Hearings Officer stated,

"it does not appear that a decision has been rendered by the

federal court on the aforesaid motion.  Further, to date, it does

_____

[9] The DOE's submission, which included the April 4, 2012
report by Kristine Takekawa ("Takekawa Report"), is Remand ROA at
258-64 (dkt. no. 59-12).  The Hearings Officer's order is
Supplemental Remand ROA at 1-2 (dkt. no. 68-1), and Plaintiffs'
response is Supplemental Remand ROA at 5-8 (dkt. no. 68-2).

not appear that [Plaintiffs'] First Amended Complaint has actually been filed in federal court."[10]  [Id.]  The Hearings Officer acknowledged that other events may have taken place after August 27, 2013 in the district court, but the Hearings Officer stated that his rulings in the Supplemental Decision on Remand were based solely on the record in the remand proceedings.  [Id.]

The Takekawa Report relates to an audiological assessment of Student while he was attending Loveland.  The purpose of the assessment was to rule out CAPD.  [Id. at 3-4.] The Hearings Officer found that the Takekawa Report, "including the tests administered during the assessment, showed that Student has normal auditory processing abilities and did not have an auditory processing disorder."  [Id. at 4.]  Uesato sent Mother a fax on January 7, 2013 stating that she was "unable to locate a provider that can complete central auditory processing disorder evaluations on Oahu."  [Id. (emphasis omitted).]  The Hearings Officer noted that Uesato did not address whether the DOE was able to conduct CAPD evaluations.  The Hearings Officer also emphasized that there was no evidence that Loveland ever evaluated Student for CAPD.  In addition, the Hearings Officer

---

[10] The Hearings Officer was mistaken.  This Court granted Plaintiffs' motion for leave to amend their complaint on July 10, 2013, and Plaintiffs filed their First Amended Complaint on July 24, 2013.  [Dkt. nos. 52, 53 (First Amended Complaint).]

found that Plaintiffs first requested a CAPD evaluation in their April 8, 2013 reply brief.  [Id.]

        The Hearings Officer concluded that the July 8, 2013 filing of Plaintiffs' motion to amend complaint in this district court did not constitute an appeal of the Decision on Remand and did not divest the Hearings Officer of jurisdiction.  The Hearings Officer emphasized that 20 U.S.C. § 1415(i)(2) refers to a "civil action" and not to an appeal.  The Hearings Officer stated that there is no authority explaining the effect that the civil action has on the administrative proceedings.  The Hearings Officer cited Anchorage School District v. D.K., No. 3:08-cv-00031 TMB, 2009 WL 5908720 (D. Alaska Oct. 30, 2009), as an example of a hearings officer's jurisdiction to issue a final decision after the school district appealed a preliminary decision.  The Hearings Officer also noted that the Decision on Remand was not an initial decision that had never been reviewed by a district court; the Hearings Officer was conducting the remand pursuant to this Court's specific directions in the 5/31/12 Order.  The Hearings Officer characterized its role on remand as similar to a special master, and he stated that deciding the CAPD rule-out issue in a separate order was analogous to a partial judgment on selected claims, as described in Fed. R. Civ. P. 54(b).  The Hearings Officer therefore

concluded that he had jurisdiction to issue the Supplemental Decision on Remand.  [Suppl. Decision on Remand at 5-6.]

The Hearings Officer concluded that Plaintiffs waived their request for a CAPD evaluation because they had all of the information necessary to make the request when they filed their March 13, 2013 brief, but they specifically limited their request for compensatory education to reimbursement of Loveland tuition. The Hearings Officer concluded that Plaintiffs' request for a CAPD evaluation in their reply brief should not be recognized. The Hearings Officer, however, considered the Takekawa Report and found it to be comprehensive.  The Hearings Officer also found that Plaintiffs failed to raise any specific challenge to the Takekawa Report and that they failed to prove that the DOE lacked the capability to perform an appropriate CAPD assessment.  [Id. at 7-8.]  The Hearings Officer therefore stated, "on the merits the Hearings Officer concludes that the DOE's 2012 assessment was adequate to rule out a central auditory processing disorder, and no further compensatory education award with respect to evaluating for a potential central auditory processing disorder would be appropriate."  [Id. at 8.]  The Hearings Officer denied any relief beyond the relief ordered in the Decision on Remand. The Hearings Officer stated that the Supplemental Decision on Remand was a final decision that was binding on all parties and appealable within thirty days of receipt.  [Id.]

19

## DISCUSSION

The legal standards applicable in IDEA appeals are set forth in the 5/31/12 Order and do not warrant repeating here. See 2012 WL 1995274, at *19-21.

## I.   Scope of Review

This Court will first address Plaintiffs' argument that the Supplemental Decision on Remand is not properly before this Court.  Plaintiffs argue that 20 U.S.C. § 1415(i)(1)(A) and (2)(B) do not authorize a hearings officer to issue a preliminary decision and retain substantive issues for later decision because a decision after a due process hearing must be final and subject to appeal.  [Pltfs.' Suppl. Brief at 3-4.]  Section 1415(i) states, in pertinent part:

> (1) In general
>
>> (A) Decision made in hearing
>>
>> A decision made in a hearing conducted pursuant to subsection (f) or (k) shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (g) and paragraph (2).
>>
>> . . . .
>
> (2) Right to bring civil action
>
>> . . . .
>>
>> (B) Limitation
>>
>> The party bringing the action shall have 90 days from the date of the decision of the 1hearing officer to bring such an action, or,

20

if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows.

20 U.S.C. § 1415(f) addresses the impartial due process hearing, and 20 U.S.C. § 1415(k) addresses changes in the placement of a student with a disability when the student has violated the school's student code of conduct. Section 1415(k) is clearly inapplicable in this case, and Plaintiffs acknowledge that the hearing on remand was not a § 1415(f) hearing, but they argue that the same legal analysis should apply to the hearing on remand as to a due process hearing. [Pltfs.' Suppl. Brief at 3-4.] The hearing on remand, however, was not subject to the same procedural requirements as an impartial due process hearing, such as the requirement of a resolution session prior to the hearing. See § 1415(f)(1)(B)(i). Even assuming, *arguendo*, that the hearing on remand was a due process hearing, nothing in either § 1415(i) or § 1415(f)(3)(E)[11] precludes a hearings officer from issuing a preliminary decision on some issues and reserving jurisdiction over other issues pending the hearings officer's consideration of other evidence. Section 1415(i) does require a hearings officer to render a final decision, but Plaintiffs have not cited, and this Court has not found, any authority construing

---

[11] 20 U.S.C. § 1415(f)(3)(E) governs the decision of a hearings officer after an impartial due process hearing. It addresses the substantive grounds and procedural grounds that a hearings officer bases the decision upon.

§ 1415(i) as limiting a hearings officer's authority to issuing **only** a final decision.

      As Plaintiffs acknowledge, the DCCA conducts the IDEA due process hearings in the State of Hawai`i, and Haw. Admin. R. Title 16, Chapter 201 applies to such proceedings. See Haw. Admin. R. § 16-201-1. Pursuant to Chapter 201, the hearings officer has the authority, *inter alia*, "[t]o dispose of any . . . matter that normally and properly arises in the course of the proceedings and to take any action authorized by this chapter, chapter 91, [Haw. Rev. Stat.], or any other related laws." Haw. Admin. R. § 16-201-17(14). Haw. Rev. Stat. Chapter 91 clearly contemplates that a hearings officer may issue a preliminary ruling prior to issuing the final ruling. See, e.g., Haw. Rev. Stat. § 91-4(a) ("Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter."). This Court therefore concludes that, pursuant to the IDEA and the applicable state law, the Hearings Officer had the authority to issue the Decision on Remand as a preliminary decision while reserving jurisdiction over the CAPD issue.[12]

---

[12] In concluding that the Hearings Officer had the authority to issue a preliminary decision, this Court rejects Plaintiffs'

                      (continued...)

In light of the fact that the Decision on Remand was a preliminary decision pending consideration of the CAPD issue, the Decision on Remand was not a final decision subject to appeal pursuant to § 1415(i)(2)(A).  The Hearings Officer clearly intended to retain jurisdiction over the case to address the CAPD issue.  The Hearings Officer: expressly concluded "the need to rule out central auditory processing disorder remains an open issue;" ordered the DOE to produce the Takekawa Report; and expressly "reserve[d] jurisdiction to fully implement the Court's remand order with an appropriate supplemental order regarding an evaluation for auditory processing disorder."  [Decision on Remand at 16, 18.]  The last paragraph of the Decision on Remand stated: "This is a final administrative decision and shall be binding upon all parties herein.  The parties have a right to appeal to a court of competent jurisdiction within (30) days of receipt of this Decision."  [Decision on Remand at 19.]  This, however, was clearly in error in light of the Hearings Officer's

---

[12](...continued)
argument that this Court should follow CARL Corp. v. State of Hawai`i Department of Education, 85 Hawai`i 431, 946 P.2d 1 (1997).  CARL is distinguishable because the Hawai`i Supreme Court reversed the hearings officer's preliminary decision because "[n]othing in the procurement code or its implementing regulations gives the Hearings Officer authority to remand to the Library for reevaluation of the proposals."  85 Hawai`i at 447, 946 P.2d at 17 (footnote omitted).  The Hearings Officer's preliminary decision in this case did not remand any issue back to the DOE for reevaluation prior to the Hearings Officer's final decision.

multiple references to the CAPD issue, which he reserved ruling on.

This Court therefore concludes that the Hearings Officer erred in stating that the Decision on Remand was final and appealable, and this Court reverses that portion of the Decision on Remand.  Plaintiffs' appeal of the Decision on Remand, while reasonable in light of the language in the last paragraph of the Decision on Remand, was premature.  This Court, however, concludes that Plaintiffs were not prejudiced by the Hearings Officer's erroneous inclusion of the appeal language in the Decision on Remand.  The Hearings Officer ultimately issued a final and appealable decision, and Plaintiffs were able to raise issues on appeal as to both the Decision on Remand and the Supplemental Decision on Remand.  This Court therefore concludes that both the Decision on Remand and the Supplemental Decision on Remand are properly before this Court.  This Court now turns to the merits of Plaintiffs' appeal.

## II.  Whether an Award of Compensatory Education is Limited to Prospective Relief

The DOE argues that compensatory education awards are limited to prospective relief, *i.e.* a student cannot recover reimbursement or payment for services that he has already received.  This Court recently addressed this issue in I.T., Civil No. 11-00676 LEK-KSC, 2013 WL 6665459, at *4-5 (D. Hawai`i Dec. 17, 2013).  For the reasons stated in that order, this Court

concludes that an award of compensatory education pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii) is not limited to an award of prospective relief and can include reimbursement for services that the student has already received.

III. **Student's Compensatory Education Award**

As stated in the 5/31/12 Order:

Compensatory education services can be awarded as appropriate equitable relief.  20 U.S.C. § 1415(i)(2)(B)(iii) ("shall grant such relief as the court determines appropriate"); Parents of Student W. v. Puyallup Sch. Dist., 31 F.3d 1489, 1496-97 (9th Cir. 1994).  Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the [Individuals with Disabilities Education Act]. The courts have discretion on how to craft the relief and "[t]here is no obligation to provide a day-for-day compensation for time missed." . . .

2012 WL 3985686, at *23 (some alterations in 5/31/12 Order) (quoting Park ex rel. Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025, 1033 (9th Cir. 2006) (some citations and quotation marks omitted)).  Equitable considerations, including the conduct of both parties, are relevant to the determination of an appropriate compensatory education award.  Parents of Student W., 31 F.3d at 1496 (quoting School Comm. of Burlington v. Department of Education, 471 U.S. 359, 374, 105 S. Ct. 1996, 2005, 85 L. Ed. 2d 385 (1985); W.G. v. Board of Trustees of Target Range School Dist., 960 F.2d 1479, 1486 (9th Cir. 1992)).  Further, this district court has recognized that a "compensatory education award is designed to catch a child up to where he or she would be

if the school district had provided a FAPE." Dep't of Educ., Hawai`i v. Ria L. ex rel. Rita L., Civil No. 12-00007 HG-KSC, 2012 WL 5383543, at *5 (D. Hawai`i Oct. 30, 2012) (citing Brennan v. Regional Sch. Dist. No. 1 Bd. of Educ., 531 F. Supp. 2d 245, 265 (D. Conn. 2008)).

In the instant case, Student is entitled to compensatory education to remedy any injury he suffered as a result of the procedural denials of FAPE, which affected the provision of mental health services and speech-language services to Student. This Court first turns to the issue of whether reimbursement for services that Student previously received at Loveland is an appropriate compensatory education award.

A. **Effect of Rulings in the 5/31/12 Order**

In the 5/31/12 Order, this Court denied Plaintiffs' request for reimbursement for Student's two years at Loveland as a compensatory education award. 2012 WL 1995274, at *29. The ruling, however, did not preclude the Hearings Officer on remand from awarding tuition reimbursement as compensatory education. If the results of the neutral evaluations, combined with the equitable considerations of this case, support a finding that the services Student received at Loveland were designed to catch Student up to where he would have been if the DOE had provided a FAPE, then an award of tuition reimbursement as compensatory education would be warranted.

26

The DOE, however, argues that this Court cannot award reimbursement of Loveland's tuition as compensatory education because, in the 5/31/12 Order, this Court concluded that, "[e]ven if Loveland Academy were an appropriate placement for [Student], the claim for reimbursement is barred by the 180-day statute of limitations found in Hawai`i Revised Statutes § 302A-443(a)(2)." 2012 WL 1995274, at *28.  Section 302A-443(a) states:

> An impartial hearing may be requested by any parent or guardian of a child with a disability, or by the department, on any matter relating to the identification, evaluation, program, or placement of a child with a disability; provided that the hearing is requested:
>
> > (1) Within two years of the date the parent, guardian, or department knew or should have known about the alleged action that formed the basis of the request for a hearing; and
> >
> > (2) Notwithstanding paragraph (1), within one hundred and eighty calendar days of a unilateral special education placement, where the request is for reimbursement of the costs of the placement.

Plaintiffs argue that § 302A-443(a)(2) does not preclude an award of reimbursement of Loveland's tuition as compensatory education because such an award would not constitute a change in Student's placement to Loveland.  This Court has not found any case law addressing whether the two-year limitations period in § 302A-443(a)(1) or the 180-day limitations period in § 302A-443(a)(2) applies to a request for compensatory education.  This Court, however, need not determine which limitations period applies

because, even assuming *arguendo*, that Plaintiffs' request for tuition reimbursement as compensatory education was timely, this Court denies the request on the merits.

**B.    Request for Reimbursement as Compensatory Education**

The 5/31/12 Order directed the Hearings Officer to determine an appropriate award of compensatory education award as to mental health services and speech-language services.

**1.    Mental Health Services**

In determining whether reimbursement of Loveland tuition is an appropriate compensatory education award as to mental health services, this Court must consider the equities of this case and whether Student's attendance at Loveland was designed to catch him up to where he would have been without the DOE's denial of a FAPE as to mental health services.

In providing the neutral evaluation for the proceedings on remand, Dr. Bolman stated that, in determining Student's diagnosis, he ultimately had to choose between a diagnosis of autism or a diagnosis of dementia.  Dr. Bolman "looked hard at Autism, but [Student's] social interests are very real, he cares about people, he wants to look good and he tries to please - all traits that are underdeveloped in you with autism spectrum conditions."  [Remand ROA at 7.]  Dr. Bolman, however, acknowledged that Student's cognitive impairments "resemble many of those in Autism, which requires much different

28

management . . . ." [Id. at 8.]  As this Court previously noted, Dr. Bolman stated that "Loveland Academy seemed to be more successful" because of its focus on "general adjustment" and its provision of "more 'dependent' support." [Id.]  Dr. Bolman also noted that it should not be difficult for Waipahu Intermediate to redirect its emphasis in light of Dr. Bolman's specific diagnosis of Student and Dr. Bolman's recommendations.  [Id.]  Dr. Bolman did note that, according to Mother, Student "was less aggressive, less withdrawn and seemed to be learning better" at Loveland. [Id. at 6.]

Dr. Bolman's recommendations included:

2.   . . . it should help if [Student] got a Functional Behavior Analysis in order to try and identify and describe better his misleading agreeable style of pretending he understands something because he does not want to make waves and be corrected.

3.   Based on this it should be possible to set up a positive behavior intervention program based on recognizing and encouraging him to ask for help when he does not understand his teachers.

. . . .

5.   If it is decided that [Student]'s FAPE entitlement requires specific attention to his generalized learning challenges and his inability to recognize them and ask for help, it will be important to create a) a system to provide for his needs and b) a system to document his progress or lack of progress, since we are dealing with a neurodevelopmental condition that has been unrecognized his entire school career.

[Id. at 9.]

The Loveland invoices that Plaintiffs submitted show that the major component of Student's program at Loveland was the Day Treatment Program.  <u>See, e.g.</u>, <u>id.</u> at 71-82.  Loveland's clinical director, John Loveland, provided a declaration which states, *inter alia*:

> The intent of this . . . Day Treatment program is to provide intensive mental health supports so that a client does not continue to decline psychologically and require inpatient psychiatric hospitalization, or to support a client coming out of an inpatient psychiatric hospital program, until s/he is stable enough to return to a less restrictive environment.  While many services are provided in a transdisciplinary manner, all contributing treatment programs . . . come under a mental health umbrella, because Loveland Academy is a Community Based Day Mental Health Treatment Center.

[<u>Id.</u> at 63.]  There is no evidence in the record that Student either came out of an inpatient psychiatric hospital program prior to entering Loveland or that Student was in such a severe psychological decline that his attendance at Loveland was necessary to avoid inpatient psychiatric hospitalization.  Thus, the evidence indicates that Loveland's intensive mental health program was not necessary for Student's condition.  This Court is also concerned with the Hearings Officer's finding that, "[d]espite its allegedly extensive initial diagnostic program, as well as its ongoing observations of Student, [Loveland] failed to properly assess Student and initially placed him in the wrong grade level."  [Decision on Remand at 13.]  These factors weigh

30

heavily against an award of tuition reimbursement as an equitable compensatory education award.

Student apparently received some mental health benefits from his participation in Loveland's intensive Day Treatment Program. Indeed, perhaps most students would also generally benefit from receiving such treatment. However, despite the DOE's denial of FAPE, this Court cannot find that equity requires the DOE to pay for a mental health program at Loveland that was far more intensive than Student's condition required. Thus, based on all of the relevant equitable considerations in this case, this Court cannot conclude that Student's attendance at Loveland was designed to place him in the position he would have been in but for the DOE's procedural denial of FAPE as to Student's mental health services.

### 2. **Speech-Language Services**

The second component of Student's compensatory education award is the remedy of the DOE's denial of FAPE as to Student's speech-language services. As noted in the discussion of the Decision on Remand, the Uesato Report identified the speech-language skills in which Student is performing at a level appropriate for his age, and it identified the areas where he has difficulty. Uesato made the following recommendations:

1. Please continue with speech-language therapy, with a focus on pragmatic and supralinguistic skills.

2.    [Student] may benefit from evaluation to rule out Auditory Processing Disorder, secondary to difficulty with comprehension of spoken narratives, occasional auditory discrimination problems, and reportedly normal audiological evaluation results.

3.    Please continue to provide [Student] with a language rich environment and age appropriate speech and language models.

[Remand ROA at 13.]

In the proceedings on remand, Plaintiffs argued that Student received services similar to what Uesato recommended as part of the speech-language services that Loveland provided. Loveland provided speech-language therapy to Student in its Biopsychosocial Rehabilitation ("BPSR") Program and in therapeutic activities.  [Remand ROA at 56-57.]  Plaintiffs therefore argue that they are entitled to reimbursement for Loveland's tuition as a compensatory education award as to Student's speech-language services.

As Plaintiffs pointed out to the Hearings Officer, Loveland's speech-language services for Student were closely coordinated with Loveland's mental health services for Student. [Id. at 56.]  Further, John Loveland's declaration states that the Day Treatment Program "[i]ntegrates mental health and speech therapies . . . ." [Id. at 64 (emphasis omitted).]  John Loveland also states that the intent of the BPSR Program "is to improve mental health by integrating the biological, psychological and social aspects of the client." [Id.]  Further,

"[m]ental health therapies are integrated into all activities."
[Id. at 65.]  Insofar as this Court has found that Loveland's
intensive mental health treatment program was excessive for
Student's needs, this Court cannot find that equity requires the
DOE to reimburse Plaintiffs for speech-language services that
Loveland provided Student within its mental health treatment
program.

Having considered all of the equitable factors related
to the mental health services and speech-language services that
Student received at Loveland, this Court finds that reimbursement
for Student's attendance at Loveland is not an appropriate
compensatory education award.  This Court therefore AFFIRMS the
Decision on Remand, to the extent that it rejected Plaintiffs'
request for tuition reimbursement as a compensatory education
award.

      **C.**   **The Hearings Officer's Award**

This Court now turns to the issue of whether the
compensatory education award that the Hearings Officer ordered in
the Decision on Remand and the Supplemental Decision on Remand is
an appropriate award.  The Hearings Officer's award is set forth
*supra* in Background section II.A.

      **1.**   **Provision of Services**

As to both Student's mental health services and
Student's speech-language services, the Hearings Officer ordered

33

that the DOE was not to delay the implementation of the mental
health program and the speech-language program that the Hearings
Officer ordered until Student's IEP team formulated or agreed
upon Student's IEP for the 2013-2014 school year. [Decision on
Remand at 18.]  This Court does not interpret the Hearings
Officer's statements as an attempt to remove the compensatory
education services from the IEP process, thereby precluding
Plaintiffs from participating in the discussion of those
services.  This Court interprets the Hearings Officer's
statements as requiring the DOE to formulate and implement the
mental health program and the speech-language program, according
to the terms of the Decision on Remand, immediately.  Thus,
Student would receive those services immediately even if there
was a delay regarding his IEP for the school year.  Student's IEP
team, however, would eventually incorporate the award into
Student's IEP and could agree to make any necessary adjustments,
as along as the services provided did not fall below what the
Decision on Remand requires.  Based on this interpretation of the
Hearings Officer's compensatory education award, this Court FINDS
that the Hearings Officer's award is appropriate as to the
services that the DOE must provide to Student, and this Court
AFFIRMS that portion of the Decision on Remand.

## 2.   **CAPD Rule-Out**

The Uesato Report recommended a CAPD rule-out, and the Hearings Officer ultimately concluded that the DOE had already ruled out CAPD.  This Court first notes that whether a CAPD rule-out is an appropriate part of the compensatory education award is a separate issue from whether Plaintiffs argued in their request for impartial hearing that the DOE denied Student a FAPE by failing to rule out CAPD.  Although Plaintiffs did not raise that FAPE argument, they did not waive the right to argue that a CAPD rule-out should be part of the compensatory education award based upon the Uesato Report.  Further, although in the proceedings on remand Plaintiffs focused on the request for tuition reimbursement as compensatory education, the Hearings Officer denied that request and ultimately issued the Decision on Remand and Supplemental Decision on Remand based on the services required in light of the Uesato Report.  The issue of whether a CAPD rule-out is an appropriate part of the compensatory education award was therefore properly before the Hearings Officer, and Plaintiffs' appeal of the Hearings Officer's ruling is properly before this Court.  This Court therefore REVERSES the Hearings Officer's conclusion that Plaintiffs waived their request for a CAPD rule-out as part of the compensatory education award.

Despite his waiver ruling, the Hearings Officer did address the issue on the merits and declined to include a CAPD rule-out as part of the compensatory education award because he found that the Takekawa Report was comprehensive and was sufficient to rule out CAPD.  [Suppl. Decision on Remand at 8.]  The Hearings Officer also found that Plaintiffs "fail[ed] to demonstrate that the DOE did not have the capability to do an appropriate assessment[.]"  [Id.]

In support of their argument that the DOE lacks the capability to perform a CAPD rule-out, Plaintiffs submitted a declaration by Mother with their reply brief to the Hearings Officer.  Mother states that, "Ms. Uesato told me that evaluations for CAPD cannot be performed in Hawaii because special equipment that is needed for that purpose is not available here.  She sent me a fax on January 7, 2013 confirming what she said."  [Remand ROA at 229, ¶ 5).]  The fax transmittal from Uesato states "I looked online & asked our audiologist & have been unable to locate a provider that can complete Central Auditory Processing Disorder Evaluations on Oahu."  [Id. at 230 (Decl. of Mother, Exh. A).]  This Court agrees with the Hearings Officer that Plaintiffs' evidence does not support their argument that the DOE lacks the capability to perform a CAPD rule-out.  Uesato's statement that she was "unable to locate a provider" does not address whether the DOE can complete CAPD evaluations on

Oahu because its not clear whether Uesato considered only private providers or whether she also considered the DOE's facilities.

Although this Court agrees with the Hearings Officer that Plaintiffs failed to establish that the DOE lacks the capability to perform a CAPD rule-out, this Court must also determine whether the record supports the Hearings Officer's finding that the Takekawa Report is sufficient to rule out CAPD. The parties acknowledge that, although the Takekawa Report and other documentation of Student's speech-language abilities and needs were available when Uesato performed her evaluation and prepared the Uesato Report, Uesato did not review them. Thus, although she presumably could have done so, Uesato did not address whether the Takekawa Report is sufficient to rule out CAPD. The Takekawa Report is based on a SCAN3 assessment of Student. [Remand ROA at 262.] This Court cannot determine from the Uesato Report whether a SCAN3 assessment is sufficient to rule out CAPD for Student or whether other types of assessments are necessary. Moreover, neither Takekawa nor Uesato had the Bolman Report when she evaluated Student and therefore neither evaluated Student in light of Student's complex mental health diagnosis. This Court FINDS that the record does not support the Hearings Officer's finding that the Takekawa Report is sufficient to rule out CAPD, and this Court REVERSES that portion of the Supplemental Decision on Remand. This Court REMANDS this case to

the Hearings Officer for further consideration of the CAPD rule-out issue.

### D.  <u>Scope of Second Remand</u>

The parties have agreed upon Uesato as a neutral evaluator of Student's speech-language abilities and needs.  This Court therefore ORDERS the parties to: 1) provide Uesato with the Bolman Report, the Takekawa Report, and all other evaluations in either party's possession of Student's speech-language abilities and needs; and 2) request a supplemental report by Uesato based upon her review of these materials and any other information that the parties agree Uesato may consider.  Specifically, Uesato's supplemental report shall, in light of her review of the materials identified by this Court: 1) state whether the Takekawa Report is sufficient to rule out CAPD for Student; 2) if the Takekawa Report is not sufficient, identify what assessments, evaluations, and/or tests are necessary to rule out CAPD for Student; and 3) identify at least three providers, with contact information, who have the facilities and the qualifications necessary to perform those assessments, evaluations, and/or tests.  If Uesato determines that the Takekawa Report is not sufficient to rule out CAPD for Student, the DOE shall submit a declaration by a DOE audiologist attesting to whether the DOE has the facilities and the qualified personnel necessary to perform the assessments, evaluations, and/or tests identified in Uesato's

38

supplemental report and, if so, give the specific information as to each facility and personnel.

Based on Uesato's supplemental report, the DOE's declaration (if necessary), and any other submissions that the Hearings Officer may allow, the Hearings Officer shall issue a final and appealable decision on the issue of whether a CAPD rule-out is an appropriate part of Student's compensatory education award.  This Court orders the parties to equally split the cost of the evaluation and to bear their own attorneys' fees and costs in the second remand.

This Court respectfully emphasizes and reminds the parties that they may not use the second remand to re-litigate issues already ruled upon in the 5/31/12 Order or in the instant order.

<u>**CONCLUSION**</u>

On the basis of the foregoing, the Administrative Hearings Officer's Findings of Fact, Conclusions of Law and Decision After Remand, filed June 7, 2013, and the Hearings Officer's Supplemental Findings of Fact, Conclusions of Law, and Supplemental Decision After Remand, filed September 26, 2013, are HEREBY AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. Specifically, this Court REVERSES: the portion of the Decision on Remand stating that it is a final and appealable decision; and the Hearings Officer's findings of fact and conclusions of law

39

regarding the CAPD rule-out issue, including the Hearings Officer's conclusion regarding waiver.  This Court REMANDS this case for the Hearings Officer's further consideration of the CAPD rule-out issue.  This Court AFFIRMS the Decision on Remand and the Supplemental Decision on Remand in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 24, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**J.T., ET AL. VS. DEPARTMENT OF EDUCATION, STATE OF HAWAI`I**; CIVIL NO. 11-00612 LEK-BMK; ORDER AFFIRMING IN PART AND REVERSING AND REMANDING IN PART THE HEARINGS OFFICER'S JUNE 7, 2013 DECISION AFTER REMAND AND SEPTEMBER 26, 2013 SUPPLEMENTAL DECISION AFTER REMAND